UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| KEVIN R. VISLAY,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-06-0301-AAM<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT,**<br>*INTER ALIA* |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 13) and the defendant's motion for summary judgment (Ct. Rec. 15).

## JURISDICTION

Kevin R. Vislay, plaintiff, applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income benefits ("SSI") on March 29, 2001. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and a hearing was held on December 3, 2002, before Administrative Law Judge (ALJ) R.J. Payne. Plaintiff, represented by counsel,

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-　　1**

appeared and testified at this hearing.  Also testifying were W. Scott Mabee, Ph.D., as a medical expert, Glen Almquist, M.D., as a medical expert, and Tom Moreland, as a vocational expert.  On March 7, 2003, the ALJ issued a decision denying benefits.  The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner.  Plaintiff appealed to this court and on November 8, 2004, the Honorable Cynthia Imbrogno issued an order reversing the ALJ's decision and remanding the matter to the Commissioner for further proceedings.

A supplemental hearing was held before ALJ Payne on July 8, 2005.  Plaintiff, represented by counsel, appeared and testified at this hearing.  Ronald M. Klein, Ph.D., testified as a medical expert.  On February 22, 2006, the ALJ issued a decision denying benefits a second time.  This decision is appealable to district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decisions, the plaintiff's and defendant's briefs, and will only be summarized here.  At the time of the July 8, 2005 hearing, plaintiff was 31 years old.  He has the equivalent of a high school education and past relevant work experience as a landscaper, kitchen helper, and construction laborer.  Plaintiff alleges disability since January 1, 2000 due to a combination of mental and physical impairments.  Plaintiff's date last insured for DIB is December 31, 2003.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      2**

1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in not according sufficient weight to plaintiff's treating and examining mental health providers; substantial evidence does not support the ALJ's findings regarding plaintiff's mental residual

/ / /

/ / /

/ / /

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        3**

functional capacity; and the ALJ erred in finding that plaintiff is capable of performing his past relevant work.[1]

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe

---

[1] There is no challenge to the ALJ's determination in his February 2006 decision that plaintiff does not suffer from a "severe" physical impairment. Magistrate Judge Imbrogno, in her November 2004 order, affirmed the ALJ's March 2003 determination that plaintiff did not suffer from a "severe" physical impairment. (Tr. at pp. 475-79).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT-        4**

impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that plaintiff has "severe" mental impairments (anxiety disorder and depressive disorder), but that he does not have an impairment or combination of impairments that meets or medically equals any of the impairments

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-       5**

listed in 20 C.F.R. § 404 Subpart P, App. 1. The ALJ found that plaintiff has the residual functional capacity (RFC) "to perform work that does not require unlimited ability to work with others." Specifically, the ALJ found the plaintiff's mental impairments, absent consideration of drug and alcohol abuse, moderately limit his ability to accept instructions and respond appropriately to criticism from supervisors. The ALJ found that plaintiff's past relevant work was not precluded by this residual functional capacity. Accordingly, the ALJ concluded the plaintiff is not disabled.[2]

**MENTAL RESIDUAL FUNCTIONAL CAPACITY**

At the first administrative hearing in December 2002, Dr. Mabee, a psychologist, testified as a medical expert. Based on his review of the record, Dr. Mabee testified there was "treatment support for both some depressive symptoms as well as panic complaints as part of an anxiety condition." (Tr. at p. 41). He testified that there appeared to be an overlay of substance dependency which exacerbated these conditions and that treating practitioners, in particular, Advanced Registered Nurse Practitioner (ARNP) Lori Pinter, prescribed medication without consideration of substance use. According to Dr. Mabee, it was not until the substance use was considered that there seemed to be an improvement and stabilization of plaintiff's conditions. Dr. Mabee testified that he evaluated plaintiff's limitations without consideration of substance abuse and opined that activities of daily living did not appear to be affected, there was some

---

[2] Alternatively, the ALJ concluded that plaintiff has the RFC to perform a limited range of heavy, medium, light, or sedentary work and although he cannot perform the full range of such work, using certain Medical-Vocational Rules as a framework for decision-making and based on the testimony of the vocational expert at the first administrative hearing, there are a significant number of jobs in the national economy which the plaintiff is capable of performing.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      6**

moderate limitation in social functioning, and there were no episodes of decompensation. (*Id.*).

Dr. Mabee completed a "Mental Medical Source Statement" in which he indicated that, with one exception, the plaintiff had "no significant limitation" in cognitive and social functioning. "No significant limitation" means "only minimal affect on ability to perform basic work functions." The one exception was a "moderate" limitation in ability to accept instructions and respond appropriately to criticism from supervisors. A "moderate" limitation is one which "affects but does not normally preclude ability to perform basic work functions." (Tr. at pp. 367-69). Dr. Mabee noted that once the plaintiff's substance abuse was targeted and treated, he appeared to be more functional and by August 2002, he was planning to attend college, playing in a band, and depression was adequately treated. (Tr. at p. 369).

In his March 7, 2003 decision, ALJ Payne adopted Dr. Mabee's assessment and agreed that absent consideration of the substance abuse issue, the plaintiff had no restrictions or limitations in activities of daily living, moderate difficulties in social functioning, and mild difficulties in maintaining concentration, persistence and pace, and a moderate limitation in working in close proximity to others without distraction. (Tr. at pp. 28-29). Based on these limitations, the ALJ found that plaintiff maintained the capacity to perform his past relevant work. (Tr. at p. 29). After a review of the medical record, including a June 2003 report from psychologist James A. Bailey, Ph.D., Magistrate Judge Imbrogno concluded "there were sufficient mental health records to support a finding that Plaintiff's substance abuse was not a material factor with respect to his continuing mental health condition" and "Dr. Mabee's conclusions were not consistent with the medical record." (Tr. at pp. 480-82). In other words, without substance abuse being a material factor, there was the possibility that plaintiff's limitations were greater

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-       7**

than those opined by Dr. Mabee and a remand was ordered for consideration of that possibility.³

In his February 2006 decision following remand, the ALJ found the record established that plaintiff's complaints persisted following the remission of his drug and alcohol abuse, however, the evidence of mental impairment was based on the plaintiff's statements and the plaintiff was not credible. (Tr. at p. 448). The ALJ again adopted Dr. Mabee's assessment in determining plaintiff's residual functional capacity. According to the ALJ:

> Dr. Mabee's assessment is based on the evidence of record through December 2002. As observed by the United States District Court, the claimant's drug and alcohol use had been in remission for a sustained period at that time. The claimant commenced school, continued socializing, maintained his own apartment, and performed his own cooking, cleaning, and shopping. He was involved in counseling. The record does not evidence a change in the claimant's condition, thereafter. The only evidence of a change in condition consists of the claimant's statements, and the claimant's statements are not consistent and he is not credible. . . . The undersigned finds that Dr. Mabee's assessment continues to accurately reflect the claimant's mental status.

(Tr. at pp. 453-54).

Because ALJ Payne determined that plaintiff suffered from a "severe" mental impairment, he could only reject plaintiff's statements based upon a finding of "affirmative evidence" of malingering or "expressing clear and

---

³ An ALJ must first conduct the five-step disability inquiry without separating the impact of alcoholism or drug addiction. If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to consider the impact of alcoholism or drug addiction. It is only if the ALJ finds the claimant is disabled and there is medical evidence of alcoholism or drug addiction that the ALJ should proceed to determine if the claimant would still be disabled if he stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-      8**

convincing reasons" for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). In this case, because there was "affirmative evidence" in the record of malingering, the ALJ was not required to provide "clear and convincing" reasons for finding the plaintiff not credible. Instead, all the ALJ needed to provide were "specific" reasons for discrediting plaintiff's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

Following the remand, the ALJ "ordered a consultative mental status examination, complete with extensive psychological testing, to assist in assessing the validity of the claimant's reports." (Tr. at p. 449). On April 7, 2005, plaintiff was seen by Jay M. Toews, Ed.D, a psychologist. Dr. Toews reviewed all of plaintiff's mental health records dating back to March of 2001. Among the tests Dr. Toews administered was the Miller Forensic Assessment of Symptoms Test (M-FAST). Plaintiff tested positive on six of seven scales for malingering and his total score was positive for malingering. As a result, Dr. Toews indicated that "a good deal of suspicion should be held regarding reports of psychiatric symptoms." (Tr. at p. 537). Furthermore, plaintiff's Minnesota Multiphasic Personality Inventory (MMPI)-2 results were "extremely invalid" with his scores being "typical of profiles indicating malingering." Plaintiff's clinical profile could not be interpreted due to "a high probability of malingering." (*Id*.). Alternative

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-      9**

explanations for the validity profile were untenable because intelligence scores indicated plaintiff possessed average verbal intelligence and verbal comprehension. (Tr. at pp. 537-38). Dr. Toews concluded that "[c]urrent assessment for malingering of psychopathology is highly positive, casting self-reports of psychiatric symptom[s] as suspicious." (Tr. at p. 538).

The report of Dr. Toews represented the first time that a mental health provider diagnosed probable malingering, but it was also the first time that a mental health provider had specifically tested for malingering. John F. McRae, Ph.D., a psychologist, did not perform such testing in his July 2001 evaluation of the plaintiff. He did do WAIS-III (Wechsler Adult Intelligence Scale) testing which indicated that plaintiff had a Verbal Comprehension Index of 101, a Verbal IQ of 91, a Performance IQ of 91, and a Full Scale IQ of 91. (Tr. at p. 204). Dr. McRae's intelligence testing was referred to by Dr. Toews in his report. (Tr. at p. 538). In his January 2003 evaluation of the plaintiff, Dr. Bailey did not perform testing to determine the validity of psychological complaints. Like Dr. McRae, Dr. Bailey also administered the WAIS-III with almost identical results (Verbal Comprehension Index of 100; Verbal IQ of 91; Performance IQ of 90; Full Scale IQ of 90). (Tr. at p. 377).

Following Dr. Toews' April 2005 evaluation, plaintiff was seen again by Dr. Bailey in June 2005. Although plaintiff apparently told Dr. Bailey of the evaluation by Dr. Toews, it does not appear that Dr. Bailey had access to Dr. Toews' test results. Interestingly, however, because plaintiff gave Dr. Bailey a "poor effort" that day, Dr. Bailey gave the plaintiff a Rey 15-Item Test and a Test of Memory Malingering (TOMM). On the Rey-15 item test, the plaintiff remembered eight of 15 items, although, according to Dr. Bailey, he should have remembered at least nine. Trial 1 of the TOMM produced a score of 31 which was "essential chance." Trial 2 produced a score of 24 "close to chance with any less than 45 . . . indicative of the likelihood of malingering." (Tr. at p. 571). Although

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-     10**

Dr. Bailey's Axis I diagnosis included "Rule Out Malingering" (*Id.*), that does not appear consistent with his test results.

Dr. Klein, the medical expert present at the July 2005 administrative hearing, testified that based on his review of the record, the "clear cut" psychological diagnosis was one of malingering. (Tr. at p. 660). Dr. Klein noted that one of the problems with malingering is that it causes one to question all verbal reports of the plaintiff without a confirming laboratory analysis. (Tr. at pp. 660-61). Dr. Klein testified that plaintiff's Full Scale IQ of 91 was within the average range for the general population and "demonstrates no cognitive or intellectual difficulty with performing cognitive activities in the workplace or elsewhere." (Tr. at p. 661). Dr. Klein noted that Dr. Bailey in January of 2003 had administered the Wechsler Memory Scale (WMS)-III to the plaintiff which produced scores ranging from a low of 80 to a high of 109. These scores, falling in the slightly below average range to the upper end of the average range, indicated no impairment with regard to memory. (Tr. at pp. 377; 661-662). Dr. Klein testified that plaintiff's total score of 11 on the M-FAST test put him "deeply into the malingering range" and suggested "he was endorsing symptoms that even chronic psychiatric patients who are . . . frequently hospitalized don't endorse." (Tr. at p. 663). Dr. Klein testified that plaintiff's MMPI-2 F-scale score in excess of 120 indicates that plaintiff "undergoes virtually every bizarre, unusual, or highly unlikely psychiatric sounding symptom on the whole scale causing one to pretty much discard the rest of the test findings there." (*Id.*). Dr. Klein testified that plaintiff's performance on the TOMM administered by Dr. Bailey indicated that plaintiff was deliberately choosing the wrong answers to appear impaired and as such, put the plaintiff "more deeply into the malingering range than any person that I have ever evaluated." (*Id.*). Dr. Klein's comment was that "[t]his is someone with [an] average IQ tending to have a memory function that is far below . . . an advanced senile dementia patient." (*Id.*).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      11**

1  Dr. Klein opined that without substance abuse addiction, there was no
2  restriction on plaintiff's daily living activities; that he would have "mild"
3  difficulty in maintaining social functioning; "mild" difficulty in maintaining
4  concentration, persistence and pace; and there would be no episodes of
5  decompensation. (Tr. at pp. 589; 665).[4]

6  It is noted that testing for malingering and the diagnosis of the same
7  occurred after plaintiff first saw Dr. Bailey in 2003, and long after plaintiff had
8  commenced seeing Nurse Pinter at Spokane Mental Health. Moreover, Pinter is
9  not considered an "acceptable medical source" pursuant to 20 C.F.R. §404.1513(a)
10 and (d) and §416.913(a) and (d). The Commissioner may accord opinions from
11 "other sources" less weight than opinions from acceptable medical sources, such
12 as treating and examining physicians. *Gomez v. Chater*, 74 F.3d 967, 970-71
13 (1996).[5] An ALJ may reject the testimony of an "other source" by providing
14 reasons germane to that witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.
15 1993). Nurse Pinter's assessment of plaintiff's condition appears to have been
16 based primarily on what was reported to her by the plaintiff, including his reports
17 of whether or not he was currently using alcohol and drugs. Due to the
18 malingering diagnosis, plaintiff's statements about his alcohol and drug use or

---

[4] Dr. Klein felt the mental impairments were not even "severe" without drug and alcohol abuse (Tr. at p. 579). The ALJ, however, did find a "severe" mental impairment based on the earlier assessment of Dr. Mabee.

[5] "Less weight" does not mean "no weight." ALJs are "not free to disregard the opinions of mental health providers simply because they are not doctors." *Duncan v. Barnhart*, 368 F.3d 820, 823 (8th Cir. 2004).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    12**

non-use are suspect.[6] Indeed, among the inconsistent statements made by the plaintiff are those relating to his alcohol and drug use. In January 2003, plaintiff told Dr. Bailey his last alcohol use was in February 2001 and at that time he was drinking a case of beer per day, plus 10 whiskeys. He reported that he had received four DUIs, one in 1992, one in 1993, one in 1995, and one in 2001. He also reported that his last use of cocaine, methamphetamine, and marijuana had occurred in February 2001. (Tr. at p. 375). This is consistent with the testimony he gave at the July 8, 2005 administrative hearing. (Tr. at p. 682). Inconsistent with that testimony, however, is an admission plaintiff made to Spokane Mental Health in December 2001 that he was using cannabis on a daily basis (Tr. at p. 255), as well as a statement he made to Dr. McRae in July 2001 that his last use of alcohol was "a couple of days ago" and then a month before that, and that he never had a period of "daily use." (Tr. at p. 203). Plaintiff also told Dr. McRae that he had not used marijuana within the past two years or so and that he had never used cocaine, heroin or speed. (*Id.*). In March 2001, plaintiff told Nurse Pinter that he had eight DUIs, with the last one occurring in 1995, and that for the "last few years" he had only drank "a few beers once or twice a month." He also told her that he last smoked pot a year or two ago and that he had no significant drug use history. (Tr. at p. 193). In February 2002, plaintiff told Pinter that he had received a DUI in December 2001and that prior to that he was using alcohol and

---

[6] Dr. Klein testified that because of the malingering diagnosis, it was not clear whether plaintiff's alcohol and drug use was truly in remission because such a diagnosis causes one to question all verbal reports of the plaintiff. (Tr. at pp. 660-61). Dr. Klein offered an alternative assessment of plaintiff's limitations assuming alcohol and drug use and to no surprise, the limitations were more severe: mild restriction on activities of daily living; moderate difficulty in maintaining social functioning; marked difficulty in maintaining concentration, persistence or pace; and four or more episodes of decompensation. (Tr. at pp. 589-665).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      13**

marijuana on the weekends and maybe once during the week.  He informed her he would be starting an in-patient treatment program on February 14, 2002.  (Tr.  at p. 298).  In sum, even Nurse Pinter's assessments of plaintiff's mental health after February 2002, when he reportedly became sober (Tr. at pp. 398 and 492), are open to debate as to whether alcohol and drug continued to be a material factor with regard to his mental health.

   Marian Beaumier, M.S.W., of Family Service Spokane, began seeing the plaintiff in September 2005.  Like Nurse Pinter, she is an "other source" instead of an "acceptable medical source."  It is not apparent if she was aware of  Dr. Toews' evaluation and malingering diagnosis.  Furthermore, her assessment of plaintiff's mental health and limitations also appears to be based on plaintiff's subjective reports.  (Tr. at pp. 593-614; 651-54).

   Plaintiff's subjective reporting is suspect because of the malingering diagnosis and numerous inconsistent statements made by him which were pointed out by the ALJ in his decision, including plaintiff's inconsistent statements about his alcohol and drug abuse, discussed *supra*.  Another example is the conflicting reasons plaintiff provided for dropping out of college including:   threatened loss of financial aid because he had a subsidized apartment as reported to Spokane Mental Health in June 2003 (Tr. at p. 429); had to help grandparents in Oregon as reported to Spokane Mental Health in June 2004 (Tr. at p. 521); testified at July 2005 hearing that financial problems were the cause (Tr. at pp. 677-78);  knee problems as cause reported to Family Service Spokane in September 2005 (Tr. at p. 597).  Another example is that in June 2005, plaintiff told Dr. Bailey he "flunked out" of college because he could not take "the pressure of homework."  This comment led Dr. Bailey to remark that plaintiff was "very vague why [college] stopped although he was vague and giving me poor effort most of this interview."  (Tr. at p. 576).  As noted above, it was during this evaluation that Dr. Bailey administered the TOMM to plaintiff, the results of which indicated a

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-        14**

likelihood of malingering. One month later, at his second administrative hearing on July 8, 2005, plaintiff said nothing about flunking out of school and indeed, reported that he had a 3.9 grade point average. (Tr. at p. 683).

The ALJ offered specific and legitimate reasons based on substantial evidence in the record for discounting plaintiff's credibility. In turn, the ALJ offered specific and legitimate reasons for rejecting Dr. Bailey's 2003 opinion regarding plaintiff's limitations[7], and he offered "germane" reasons for rejecting the opinions of Nurse Pinter and Ms. Beaumier. Substantial evidence in the record supports Dr. Mabee's assessment of plaintiff's limitations (with or without drug and alcohol use) and therefore, the ALJ properly relied on Dr. Mabee's opinion in determining the plaintiff's residual functional capacity.[8]

Plaintiff does not specifically argue that the residual functional capacity as determined by the ALJ would preclude him from performing his past relevant work or other work existing in the regional and national economies. In any event, there is substantial evidence in the record that it would not preclude him from performing such work. At the initial administrative hearing in December 2002, the ALJ asked the vocational expert about the plaintiff's capacity to perform his past relevant work, specifically considering a "moderate" limitation in ability to accept instructions and respond appropriately to criticism from supervisors. The

/ / /

---

[7] An ALJ may reject the opinions of examining physicians only for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[8] The reports of a non-examining medical expert/advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      15**

ALJ showed the vocational expert the "Mental Medical Source Statement" that had been completed by Dr. Mabee. (Tr. at p. 74). The vocational expert testified:

> I think the job as a lawn maintenance service worker where he was self-employed would definitely be within your hypothetical because one is basically on their own and have very little contact with a supervisor. And the rest of them I think, based on the definition of moderate, I don't think there'd be any difficulty with kitchen help or dishwasher, painter, cleaner, et cetera.

(Tr. at p. 75). The vocational expert went on to testify that plaintiff would also be capable of performing other jobs including assembler, laundry sorter/folder, agricultural sorter, poultry worker, and warehouse worker. (Tr. at pp. 75-76).

## CONCLUSION

Substantial evidence supports the Commissioner's decision that plaintiff is not disabled. Accordingly, defendant's motion for summary judgment (Ct. Rec. 15) is **GRANTED** and plaintiff's motion for summary judgment (Ct. Rec. 15) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this   17th    of May, 2007.

                    s/ Alan A. McDonald
                    ALAN A. McDONALD
                Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        16**